IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-250-H

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MELVIN TAYLOR, JR., ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to suppress [DE #32], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government filed a response in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on June 22, 2016, at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is now ripe for decision.

## STATEMENT OF THE CASE

On September 2, 2015, a federal grand jury returned a four-count indictment charging Melvin Taylor, Jr. ("Taylor") with: (1) knowingly and intentionally distributing a quantity of heroin, in violation of 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute a quantity of heroin and a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (4) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On January 18, 2016, Taylor filed the instant motion to suppress. Taylor contends that a search warrant was issued for 3614 Sue Ellen Dr., Raleigh, NC, 27604 without probable cause in violation of the Fourth Amendment. He demands that any evidence obtained be suppressed. The government argues that the search warrant was issued upon a showing of probable cause, and even

if the warrant were issued without probable cause, the evidence seized is admissible under the good faith exception to the warrant requirement.

## STATEMENT OF THE FACTS

At the evidentiary hearing on Taylor's motion, the court heard the testimony of Detective Nathan Braswell, Sergeant Michael Hendricks, and Detective Robert Pereira, all of whom are employed with the Raleigh Police Department. Based upon the officers' testimony and documentary evidence, the undersigned makes the following findings of fact.

On February 1, 2015, a concerned citizen called 911 and reported that a black male with dreadlocks between the ages of 30 and 40 regularly sold cocaine. The caller provided the address 3614 Sue Ellen Drive and a cell phone number. Sergeant Hendricks received the report and assigned the investigation to Detective Braswell.

In March 2015, Detective Braswell received corroborating information from a cooperating defendant. The cooperating defendant identified "Mel," also known as "Rah," as his narcotics dealer, stating that the drug transactions were performed in a parking lot and that "Mel" lived on Sue Ellen Drive. Further, the cooperating defendant said that "Mel" was a tall, skinny, black male with dreadlocks and that he often carried a pistol. The cooperating defendant gave a phone number for "Mel" that was identical to the number given by the concerned citizen.

Over the next few months, Detective Braswell continued to perform covert surveillance and regular drive-bys of 3614 Sue Ellen Drive. The home was registered to the City of Raleigh's Housing Authority with the residents listed as a black female named Sonya Hart and seven children. No male was listed as a resident.

On April 26, 2015, Detective Braswell was conducting covert surveillance on 3614 Sue Ellen Drive, when a red Town & Country van with either a Florida or Georgia license plate was

2

parked in the driveway. The van left and, before returning, another vehicle driven by a Hispanic male pulled up. Once the van returned, the driver of the van and the Hispanic male had a brief conversation. The van then backed into the driveway, and a black male matching the descriptions given by the concerned citizen and the cooperating defendant got out of the van and entered the home.

On May 14, 2015, Detective Braswell requested help from Sergeant Hendricks and Detective Pereira in performing surveillance on 3614 Sue Ellen Drive. Around 2:20 p.m., an older model, tan pick-up truck parked in the driveway. Detective Braswell ran the license plate and found that the truck was registered to a white male named Matthew Price who did not live in the Raleigh area. When contacted, Mr. Price stated that he had let a black male named "Rah" use the truck. The truck left without Detective Braswell having observed it, but around 3:30 p.m. the truck returned, driven by a black male approximately forty years old with dreadlocks and wearing a white t-shirt and black pants. Detective Braswell relayed the information to his team.

The male, later identified as Melvin Taylor, Jr., stood outside talking on the phone for about ten minutes. Then he entered 3614 Sue Ellen Drive, reemerged about fifteen minutes later, and left the residence driving the tan pick-up truck. Sergeant Hendricks followed Taylor after he left the residence, and radioed that he saw Taylor going southbound on Capital Boulevard.

At this time, it was between 4:30 p.m. and 5:00 p.m., and traffic was heavy on Capital Boulevard. Sergeant Hendricks got caught at a stoplight, but he saw Taylor pull into the parking lot of a shopping center located off Capital Boulevard and park in front of a Game Stop store. Sergeant Hendricks then observed a white male and female walk toward the tan pick-up from a nearby bus stop. The female approached the driver's side window. Sergeant Hendricks saw her lean in the window and hand the driver what appeared to be currency then withdraw her hand and

3

put something in her purse. The white male and female then crossed Capital Boulevard and walked northbound, away from the shopping center.

Detective Braswell and Detective Pereira intercepted the male and female and spoke with them about what the officers had observed. The male and female were separated. Detective Braswell spoke to the male, while Detective Pereira spoke to the female. The female admitted to buying narcotics from the driver of the pick-up, whom she called "Mel." She retrieved two gel capsules, which appeared to contain heroin, from her front left pants pocket and gave them to Detective Pereira. She provided a description of "Mel," which matched the two previous descriptions, and stated that she bought the two capsules of heroin from him for forty dollars.

Sergeant Hendricks maintained surveillance on the tan pick-up and observed the truck drive to a sweepstakes store within the same shopping center. Taylor parked in front of the store and went inside. Detective Braswell responded to the sweepstakes store, and after about an hour, Taylor exited the store and got into the tan pick-up truck. The officers then arrested Taylor. Taylor was identified by his government ID card, which stated his name as Melvin Taylor, Jr., and his address as 3614 Sue Ellen Drive. Taylor had previously been convicted of selling and delivering marijuana, possession with the intent to sell and distribute cocaine, felony possession of cocaine, and a misdemeanor marijuana charge.

Detective Braswell wrote the affidavit for the search warrant and submitted it to the county magistrate. The search warrant application was for 3614 Sue Ellen Drive, Raleigh, North Carolina, 27604. In relevant part, the affidavit in support of probable cause reads:

> I received information from a concerned citizen that wants to remain anonymous for fear of retaliation that a subject by the name of "Mel" was selling heroin from 3614 Sue Ellen Drive, in Raleigh NC. This information was documented in P15-006003. I also received information from a separate cooperating defendant that a black male 30's to 40's by the name of "Mel" or "Rah" was selling heroin in the Raleigh area and was currently staying at 3614 Sue Ellen

4

Case 5:15-cr-00250-H   Document 53   Filed 08/11/16   Page 4 of 9

Drive. On 05/14/15 at approximately 3:30 pm I conducted surveillance at 3614 Sue Ellen Drive with members of Drugs and Vice Team 1 to include Det. Pereira, Sgt. Hendrix, and I. I observed a black male between the ages of 30's to 40's leave the front door of 3614 Sue Ellen Drive. This male got into a tan 1999 Ford F150 truck with NC license plate number of CHC2131. The black male was the only person in this vehicle while driving. Detectives followed the vehicle and Sgt. Hendrix observed the same vehicle turning south bound on Capital Blvd and travel straight to a parking lot on Capital Blvd near Huntleigh Drive, 3023 Capital Blvd. Sgt. Hendrix communicated this information over the radio and he observed the same vehicle stop in a parking lot near the Game Stop. Two subjects then approached the vehicle and a female subject leaned into the driver's window of the vehicle and then placed an item in her purse. Sgt. Hendrix in his training and experience communicated this information over the radio and believed a drug transaction had taken place. The female walked away from the parking lot area and was detained by Det. Pereira and Det. Braswell. Det. Pereira detained the female and asked her about having any illegal narcotics on her person. The female told Det. Pereira that she had some heroin and gave it to Det. Pereira. The cooperating defendant then said that she had just purchased the heroin from a black male by the name of "Mel" for forty dollars and that he was driving a tan in color pick-up truck. Sgt. Hendrix maintained surveillance on the pick-up truck and the driver went inside the Sweepstakes business located at 3033 Capital Blvd. I then responded to the location of the same pick-up truck and saw the same black male subject that had left earlier from 3614 Sue Ellen Drive walk out of the Sweepstakes business and get into the driver seat of the same tan pick-up truck. The subject was arrested and his NCID card identified his as Melvin Taylor Jr. DOB: 03/30/1972 this NCID card has his address as 3614 Sue Ellen Drive on it.

(Gov't Ex. 1, Search Warrant Affidavit at 3-4.) The magistrate approved the search warrant.

The search warrant was executed at 10:30 p.m. on May 14, 2015. Sonya Hart and her seven children were present at the time of the search. Items seized in the home included documents for Taylor, three firearms, $3,552.00 in cash, 134 gel capsules of heroin, 4.2 grams of marijuana, and items for packaging and selling heroin.

## **DISCUSSION**

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures and that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "[I]n 'the ordinary case,' seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless ... accomplished pursuant

5

to a judicial warrant,' issued by a neutral magistrate after finding probable cause." *Illinois v. McArthur,* 121 S. Ct. 946, 949 (2001) (quoting *United States v. Place,* 462 U.S. 696, 701 (1983)); *see also United States v. Harris,* 403 U.S. 573, 577 (1971) (search warrants must be supported by probable cause to satisfy dictates of Fourth Amendment). Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). "Probable cause may be founded on hearsay and information received from informants." *United States v. DeQuasie,* 373 F.3d 509, 518 (4th Cir. 2004). Accordingly, when reviewing a warrant for probable cause, a magistrate should consider the totality of the circumstances and must consider the basis for the confidential informant's knowledge. *Gates,* 462 U.S. at 238.

Here, the search warrant was supported by probable cause. A concerned citizen and a cooperating defendant both indicated that a man named "Mel" was selling heroin and staying in a house on Sue Ellen Drive. The concerned citizen specifically noted the address of 3614 Sue Ellen Drive. The cooperating defendant also provided the description that "Mel" was a black male in his thirties or forties. Furthermore, Detective Braswell corroborated the information provided by both informants by performing an investigation and conducting covert surveillance on the residence.

On May 14, 2015, Detective Braswell observed a black male in his thirties or forties leave 3614 Sue Ellen Drive in a tan pick-up truck. Upon being followed by Sergeant Hendricks, the driver parked in a shopping center located off Capital Boulevard in Raleigh, North Carolina, where what appeared to be, and was later confirmed to be, a drug transaction occurred. The female involved in the drug transaction was detained by Detective Pereira, and she produced two heroin capsules stating she had just bought them from "Mel," the driver of the pick-up truck. Officers

6

followed the pick-up truck to a sweepstakes store and watched the driver enter the store. Upon the driver exiting the sweepstakes store and getting into the driver's seat of the pick-up truck, officers arrested the defendant. Taylor produced a government ID card identifying him as Melvin Taylor, Jr. and listing his address as 3614 Sue Ellen Drive.

Based on information provided by both a concerned citizen and a cooperating defendant, corroborating evidence of Defendant's identity and residence obtained by officer surveillance, the officers' observation of a drug transaction, which was confirmed by the purchaser, and the address listed on Defendant's ID card, there existed "a fair probability that contraband or evidence of a crime [would] be found" at the residence. *Gates,* 462 U.S. at 238. Therefore, probable cause supported the search warrant for 3614 Sue Ellen Drive.

Even assuming, *arguendo*, that the evidence seized from 3614 Sue Ellen Drive was seized in violation of the Fourth Amendment, suppression is not warranted in this case. The officers here acted in good faith reliance on a warrant authorizing seizure of the subject evidence.

Generally, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule, the purpose of which is to deter future, unlawful conduct by law enforcement. *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009). Because the deterrent purpose is not served in all circumstances, an exception exists where "evidence [is] obtained pursuant to a search warrant issued by a neutral magistrate . . . if the officer's reliance on the warrant was 'objectively reasonable.'" *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal quotation marks omitted). Thus, "the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant" are subject

7

to suppression only where "'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Perez*, 393 F.3d at 460-61 (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)). Suppression remains the appropriate remedy only where: (1) the judicial official who issued the warrant was misled by information in an affidavit that the affiant knew to be false or would have known to be false but for the officer's reckless disregard of the truth; (2) the issuing official "wholly abandoned his judicial role" as a neutral and detached magistrate; (3) the warrant is based on an affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so fatally deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

Assuming probable cause did not exist in this case, this is not a case where the affidavit submitted for issuance of a warrant was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)). There being no evidence to support a finding that the magistrate abandoned his detached and neutral role, that the warrant was obtained as a result of any dishonesty or reckless disregard for the truth, or that the warrant failed to specify the particular place to be searched or things to be seized, the officers' reliance on the warrant issued in this case was objectively reasonable.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that Defendant's Motion to Suppress [DE #32] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 29, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 11th day of August 2016.

_____
KIMBERLY A. SWANK
United States Magistrate Judge